UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JESUS RODRIGUEZ,<br><br>　　　　Defendant. | Civil Action No: 3:24-cv-00027-KC |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR REMEDIES AGAINST DEFENDANT JESUS RODRIGUEZ**

Todd D. Brody
Admitted *Pro Hac Vice*
Nicholas Flath
Admitted *Pro Hac Vice*
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl St., Suite 20-100
New York, NY 10004-2616
(212) 336-0080 (Brody)
brodyt@sec.gov

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ............................................................................... 1

PROCEDURAL BACKGROUND.................................................................................................. 1

STATEMENT OF FACTS .............................................................................................................. 3

ARGUMENT ................................................................................................................................... 5

Success on the Merits...................................................................................................................... 5

Irreparable Harm Will Result in the Absence of an Injunction ....................................................... 6

The Balance of Equities and the Public Interest Favor an Injunction............................................. 7

CONCLUSION................................................................................................................................ 8

# **TABLE OF AUTHORITIES**

*SEC v. Barton*, 135 F.4th 206 (5th Cir. 2025) ................................................................................ 5

*SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1978) .............................................................................. 6-7

*SEC v. Chappell*, 107 F.4th 114 (3d Cir. 2024) ............................................................................ 6

*SEC v. Farias*, 20-cv-885, 2022 WL 3031082 (W.D. Tex. Aug. 1, 2022) ................................. 7-8

*SEC v. Fife*, 311 F.3d 1 (1st Cir. 2022) ......................................................................................... 6

*SEC v. Gann*, 565 F.3d 932 (5th Cir. 2009) .................................................................................. 6

*SEC v. Gordon*, 21-cv-1642, 2021 WL 5086556 (N.D. Tex. Nov. 1, 2021) ................................. 7

*United States v. Silva,* 05-CA-710, 2008 WL 11405958 (W.D. Tex. July 17, 2008) .................... 7

*SEC v. Life Partners Holdings, Inc.*, 12-CV-33, 2018 WL 5733137 (W.D. Tex. Sept. 28, 2018). 8

*SEC v. Mize*, 615 F.2d 1046 (5th Cir.), *cert. den.*, 449 U.S. 901 (1980) ........................................ 5

*SEC v. Sargent*, 329 F.3d 34 (1st Cir. 2003) ................................................................................. 6

*SEC v. Zale Corp.*, 650 F.2d 718 (5th Cir.), *cert. den.*, 454 U.S. 1124 (1981) ........................... 5-6

*Starbucks v. McKinney*, 144 S. Ct. 1570, 1576 (2024) ............................................................. 5, 7

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) ....................................................... 5

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law, along with the Declaration of Nicholas Flath ("Flath Decl."), in support of its Motion for Remedies against Defendant Jesus Rodriguez ("Rodriguez").

## STATEMENT OF ISSUES TO BE DECIDED

The Court in this case previously granted the SEC default judgment as to Rodriguez's liability for violations of: (1) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and (2) Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and (2)]. (Dkt. #13). In this motion, the SEC now seeks a final order that permanently enjoins Rodriguez from future violations of those statutes pursuant to Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)] and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)]. The SEC does not seek any monetary relief from Rodriguez in light of his criminal sentence in a parallel criminal case *United States v. Rodriguez*, 23-cr-02507 (W.D. Tx.) (the "Criminal Case"), which included a term of incarceration of 144 months, an order requiring Rodriguez to pay restitution in the amount of $5,554,968.10 (as relating to the investors harmed), and an order requiring Rodriguez to forfeit $230,075.36 and an automobile.

## PROCEDURAL BACKGROUND

The SEC filed its Complaint in this civil enforcement action on January 24, 2024. Dkt. #1. The SEC's Complaint generally alleges that from approximately 2014 through 2021, Rodriguez engaged in a fraudulent scheme to misappropriate at least $3.4 million from at least

1

ten investors (collectively, "Investors") while serving as their registered representative and/or investment adviser representative at Morgan Stanley.[1]

On April 5, 2024, after Rodriguez failed to respond to the Complaint, the SEC moved to have the clerk enter default against Rodriguez. Dkt. #8. The clerk entered the default on that same date. Dkt. #9. On May 15, 2024, the SEC moved for a default judgment against Rodriguez. Dkt. #11-12. On January 3, 2025, the Court granted the SEC's motion in part, finding that default judgment was procedurally warranted, and that the SEC's pleading provided a sufficient basis for entry of default judgment as to liability. Dkt. #13. In particular, the Court held that "a reasonable investor would consider it important to know whether his banker is stealing his money" and that "Rodriguez's failure to tell the Investors that he was misappropriating their money was thus a material omission, and his lies about whether he had made unauthorized transfers were material misrepresentations." *Id*. at 11. With respect to scienter, the Court held that "[i]t is not difficult to plausibly infer intent when a securities professional 'pocketed' millions of dollars from his clients. The 'indications of an attempted cover-up' only make this inference stronger." *Id.* at 12 (citations omitted).

The Court deferred decision on relief until after Rodriguez's sentencing in the Criminal Case.[2] The Court held that after Rodriguez was sentenced, "the SEC may file a new motion requesting all relief—by way of an injunction, civil penalties or otherwise—to which it believes it is entitled in this matter." *Id.* at 14. The Court cautioned the SEC that to support its request

---

[1] The SEC's prior filings identified Morgan Stanley as "Firm A." Flath Decl. ¶ 7.
[2] Rodriguez pled guilty in the Criminal Case to one count of wire fraud, in violation of 18 U.S.C. § 1343; one count of engaging in a monetary transaction over $10,000 using criminally derived proceeds, in violation of 18 U.S.C. § 1957(a); one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A; and one count of making and subscribing a false income tax return, in violation of 26 U.S.C. § 7206(1). Flath Decl. Ex. A.

2

for relief, it must either provide evidence or a brief explaining why evidence is unnecessary in this context. *Id.* On March 27, 2025, Rodriguez was sentenced in the Criminal Case to a term of incarceration of 144 months and ordered to pay restitution of $5,554,968.10 to Morgan Stanley. Rodriguez was previously ordered to forfeit $230,075.36 and an automobile.

## STATEMENT OF FACTS

The facts alleged in the Complaint are summarized in the Court's January 3, 2025 Order Dkt. #13 at 1-5. Additional evidence in support of the requested injunctive relief consists of Rodriguez's admissions in the Criminal Case. In connection with his guilty plea in the Criminal Case, Rodriguez admitted, among other things, that while working as a financial advisor at Morgan Stanley, he intentionally carried out a scheme to defraud Morgan Stanley and its clients. Flath Decl., Ex. B at 4. Rodriguez further admitted that he orchestrated the fraudulent transfers of money in bank accounts belonging to Morgan Stanley or from Morgan Stanley's clients to other bank accounts for his own benefit. *Id.* These admissions by Rodriguez are consistent with the Complaint's allegations that Rodriguez exploited his position as a registered representative and/or investment adviser representative to misappropriate brokerage customer and advisory client funds. *See generally* Compl. ¶¶ 14-19.

In connection with his guilty plea, Rodriguez also made detailed factual admissions about one of the defrauded Investors, identified as "R.S" who is identified in the SEC's Complaint as "Investor C." Flath Decl. ¶ 8. Rodriguez admitted that, in 2018, he convinced R.S. to invest with Morgan Stanley, with Rodriguez acting as R.S.'s financial advisor. Flath Decl., Ex. B at 4. Rodriguez further admitted that, in approximately November 2018, Rodriguez persuaded R.S. to open a Morgan Stanley line of credit account ("R.S.'s Line of Credit Account"), that he created false communications impersonating R.S. to cause Morgan Stanley to

3

process fraudulent transfers of money drawn on R.S.'s Line of Credit Account, and that Morgan Stanley relied on these false communications in processing the transactions. *Id.* These admissions are consistent with the SEC's allegation that Rodriguez stole from R.S. (Investor C) by leveraging her Morgan Stanley line of credit. *See generally* Compl. ¶ 44.

Rodriguez admitted orchestrating three fraudulent wire transfers from R.S.'s Line of Credit Account, including one that the SEC also highlighted in its Complaint. Flath Decl., Ex. B at 4-5. Specifically, Rodriguez admitted that in December 2018, he used a fictitious email account and forged R.S.'s signature on a letter, to impersonate R.S. and purportedly authorize a $125,000 wire transfer from R.S.'s Line of Credit Account for the purchase of real estate. *Id.* at 5. Morgan Stanley relied on this fraudulent communication to wire $125,000 to an account at a separate financial institution. *Id.* Rodriguez used these funds to purchase a Lamborghini for himself. *Id.* Rodriguez's admissions confirm the SEC's allegations about this transfer, including that it was for the purchase of a Lamborghini. Compl. ¶ 28-29.

Rodriguez also admitted that he committed similar acts using other clients' accounts and that, as a result of his fraudulent scheme, Morgan Stanley (who had repaid the harmed Investors) lost a total of $5,554,968.10. Flath Decl., Ex. B at 6.

When given an opportunity to speak at sentencing, Rodriguez did not mention his investor victims, prompting the Judge in the Criminal Case to comment, "Well, let me say, Mr. Rodriguez, one thing I noticed in your allocution is, you didn't say anything about the victims. I mean, how do you feel about what you did to all of those people? Did you not even think about it?" Pressed by the Court, Rodriguez stated: "I do [think about the Investors]" but then immediately focused again on his own anxiety. Flath Decl. Ex. C at 8:11-9:17.

4

**ARGUMENT**

The Court should permanently enjoin Rodriguez from future violations of the securities laws that the SEC alleges in the Complaint Rodriguez violated; *i.e.*, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and Sections 206(1) and (2) of the Advisers Act.

In SEC enforcement actions, Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and Section 209 of the Advisers Act [15 U.S.C. § 80b-9] authorize the entry of permanent injunctions against violations of the Exchange Act and the Advisers Act. *See SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir.), *cert. den.*, 454 U.S. 1124 (1981); *SEC v. Mize*, 615 F.2d 1046, 1051 (5th Cir.), *cert. den.*, 449 U.S. 901 (1980).

To obtain a permanent injunction, the SEC must demonstrate that: (1) the SEC has actually succeeded on the merits, (2) irreparable harm will likely result in the absence of the injunction, (3) the balance of the equities tips in the SEC's favor, and (4) the injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008); *see also Starbucks v. McKinney*, 144 S. Ct. 1570, 1576 (2024) ("[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity," which, with regard to injunctive relief, includes using "the traditional four-part test" set forth in *Winter*); *SEC v. Barton*, 135 F.4th 206, 226-28 (5th Cir. 2025) (applying *Starbucks* in reviewing preliminary injunction granted to SEC). Each of the four *Winter* factors is met here.

Success on the Merits

The first *Winter* factor is met because, as the Court found in granting default judgment to the SEC on liability, Rodriguez violated the securities laws. As such, the SEC has succeeded on the merits of its claims against Rodriguez.

Irreparable Harm Will Result in the Absence of an Injunction

The second *Winter* element–irreparable harm–is met by showing that Rodriguez will likely commit future violations. *See SEC v. Chappell*, 107 F.4th 114, 138 (3d Cir. 2024); *SEC v. Sargent*, 329 F.3d 34, 39-40 (1st Cir. 2003) (citing *SEC v. Fife*, 311 F.3d 1, 8-9 (1st Cir. 2022); *see also SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978) ("The critical question in issuing the injunction . . . is whether defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future"); *Zale*, 650 F.2d at 720 ("[SEC] is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of the present circumstances, betoken a 'reasonable likelihood' of future transgressions.").

In determining whether there is a reasonable likelihood of future violations, courts consider (1) the egregiousness of the defendant's conduct; (2) the isolated or recurrent nature of the violation; (3) the degree of scienter; (4) the sincerity of the defendant's recognition of the transgression; and (5) the likelihood of defendant's job providing opportunities for future violations. *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009).

Here, the balance of these considerations establishes Rodriguez's likelihood to violate the anti-fraud provisions of the securities laws in the future. First, Rodriguez's conduct was egregious and made with a high degree of scienter. As Rodriguez admitted in the Criminal Case, he knew that investors never authorized the transactions through which he misappropriated their money. Flath Decl. Ex. B at 5. Rodriguez also admitted to drafting fake letters from investors to Morgan Stanley and even to creating a fictitious email account to impersonate one of the investors. *Id*. at 4-5. Additionally, Rodriguez's conduct was not "isolated." As he admitted, his conduct took place over more than three years—from at least May 2018 until August 2021 – and involved defrauding multiple investors. *Id*. at 4. Additionally, by failing to appear in

6

this action, Rodriguez has not provided any assurance that he recognizes his wrongdoing. *See SEC v. Gordon*, 21-cv-1642, 2021 WL 5086556, at *9 (N.D. Tex. Nov. 1, 2021) (Defendants' failure to appear "demonstrates a lack of remorse"); *United States v. Silva*, 05-CA-710, 2008 WL 11405958, at *3 (W.D. Tex. July 17, 2008) (defendants' failure to participate in the action or defend their conduct supported a finding that there was a "reasonable likelihood" that they would continue to violate the Fair Housing Act). Although Rodriguez pled guilty and thus, to an extent, accepted responsibility in the Criminal Case, the observation of the Judge in the Criminal Case that Rodriguez failed to "say anything about the victims" casts doubt on the extent of Rodriguez's remorse. Finally, while Rodriguez is presently incarcerated and thus not currently employed in a manner that presents opportunities for future securities law violations, this standing alone does not preclude injunctive relief. *See SEC v. Farias*, 20-cv-885, 2022 WL 3031082, at *2 and *6 (W.D. Tex. Aug. 1, 2022) (granting injunction even though Defendant had been sentenced to serve 135 months' imprisonment following his plea of guilty in the parallel criminal action).[3]

The Balance of the Equities and the Public Interest Favor an Injunction

The remaining two *Winter* factors (balancing the equities and consideration of the public interest) are easily met here.[4] The balance of the equities favors the SEC because the potential

---

[3] The Commission notes that the Financial Industry Regulatory Authority ("FINRA") initiated an investigation of Rodriguez after receiving a Form U-5 from Morgan Stanley–the form that a broker-dealer must file when a registered representative leaves the firm. Flath Decl. Ex. D. at 1. Rodriguez, represented by counsel, declined to cooperate with the investigation in violation of FINRA's rules. *Id*. at 2. Ultimately, Rodriguez agreed to be barred from associating with any FINRA member in all capacities. *Id*. In addition, in 2024, Rodriguez was criminally charged by the State of Texas with theft (and other related charges) for allegedly stealing from an elderly couple even after his departure from Morgan Stanley. Flath Decl. Ex. E.

[4] Courts in the Fifth Circuit have historically granted injunctions to the SEC without explicitly considering the balance of the equities or the public interest. *Cf. Blatt*, 583 F.2d at 1334. The SEC addresses these factors in light of *Starbucks*. *See* 144 S. Ct. at 1576.

7

harm to investors outweighs Rodriguez's interests, and because it is in the public interest to uphold the interests of defrauded investors and enforce the federal securities law. *Barton*, 135 F.4th at 227. Courts in this district have issued permanent injunctions in the SEC's favor in similar circumstances. *See. Farias*, 2022 WL 3031082, at *6 (defendant, like Rodriguez, pled guilty in a parallel criminal case); *SEC v. Life Partners Holdings, Inc.*, 12-CV-33, 2018 WL 5733137, at *3 (W.D. Tex. Sep. 28, 2018) (defendants misrepresented material information about the securities they were selling); *SEC v. Helms*, 13-CV-1036, 2015 WL 5010298, at *18 (W.D. Tex. Aug. 21, 2015) (defendants perpetrated a Ponzi scheme).

## CONCLUSION

For these reasons set forth above, the Court should permanently enjoin Rodriguez from future violations of Section 10(b) of the Exchange [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)].

Dated:  New York, NY
        May 23, 2025

Respectfully submitted,

　　　／s／ Todd D. Brody　　
Todd D. Brody
Admitted *Pro Hac Vice*
Nicholas Flath
Admitted *Pro Hac Vice*
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl St., Suite 20-100
New York, NY 10004-2616
(212) 336-0080 (Brody)
brodyt@sec.gov